United States District Court
Southern District of Texas
FILED

FEB 1 2 2003

Michael N. Milby
Clerk of Court

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| JOHN A. FERRIS, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-03-017 |
| | § | |
| STATE FARM LLOYDS, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT STATE FARM LLOYDS'
MOTION FOR SUMMARY JUDGMENT**

TO UNITED STATES DISTRICT JUDGE HILDA G. TAGLE:

Pursuant to Federal Rule of Civil Procedure 56 and S.D. Local Rule 7.1, Defendant State Farm Lloyds ("State Farm") files this Motion for Summary Judgment, and would respectfully show the Court the following:

**I.
Summary of Argument**

In this action, Plaintiff John A. Ferris, Jr. ("Dr. Ferris") has sued for a declaration of liability coverage under his Texas Homeowners Policy, Form B, No. 83-P8-1982-6 (the "Policy") and for a defense and indemnity in Cause No. 2002-03-001003-B, styled *Aldon Williams, M.D. et al. v. John Ferris, M.D., et al.*, a DTPA lawsuit filed in the 138th Judicial District Court, Cameron County, Texas (the "Underlying DTPA Action").

Under Texas law, a liability carrier's duty to defend is determined solely by the factual pleadings against the insured measured against the policy provisions. The Policy in this case provides coverage only

for "bodily injury" or "property damage" caused by an "occurrence." The Fourth Amended Petition (the "Underlying Petition") in the DTPA Action does not allege facts within the meaning of the term "occurrence." Therefore, State Farm has no duty to defend, indemnify or reimburse Dr. Ferris in connection with the Underlying DTPA Action.

In the alternative, even if the Underlying Petition alleges an "occurrence," Exclusion 1.b of Endorsement HO-210 of the Policy precludes coverage for "bodily injury or property damage arising out of or in connection with a business engaged in by an insured." The Underlying Petition alleges that Dr. Ferris's allegedly wrongful acts arose out of and in connection with his business of developing a subdivision. Accordingly, Exclusion 1.b precludes coverage and State Farm has no duty to defend, indemnify or reimburse Dr. Ferris in connection with the Underlying DTPA Action.

Finally, if there is no potential duty to defend under the pleadings against the insured, there can be no duty to indemnify either. Because the provisions of the Policy preclude coverage as a matter of law for all allegations in the Underlying DTPA Action, State Farm is also entitled to summary judgment that it has no duty to indemnify Dr. Ferris.

## II.
## Summary Judgment Standards

Federal Rule of Civil Procedure 56 requires this Court to grant summary judgment if the evidence shows there is "no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). A defendant moving for summary judgment must only present evidence disproving "the existence of any essential element of the opposing party's claim." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Once the movant has made this showing, the non-movant must then produce specific evidence showing a genuine

issue of disputed fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Washington v. Armstrong World Indus., Inc.*, 839 F.2d 1121, 1123 (5th Cir. 1988). Disputes over irrelevant, immaterial or unnecessary facts will not render summary judgment inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988); *see also Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, (1986) (non-moving party must present more than a metaphysical doubt about the material facts).

## III.
## Summary Judgment Evidence

This Motion relies on the pleadings on file in this action and the following summary judgment proof, which is attached hereto and incorporated by reference:

> Exhibit A:    Certified copy of Fourth Amended Petition in *Aldon Williams, M.D. et al. v. John Ferris, M.D., et al.*, 138th Judicial District Court, Cameron County, Texas; and

> Exhibit B:    Business Records Affidavit of Christine Rodriguez (certifying Texas Homeowner's Policy No. 83-P8-1982-6).

## IV.
## Facts

As discussed in more detail below, whether a liability insurer has a duty to defend in a particular case depends solely on the allegations of fact in the underlying petition against the insured and the terms of the applicable insurance policy. *Guaranty National Ins. Co. v. Azrock Indus., Inc.*, 211 F.3d 239, 243 (5th Cir. 2000); *National Union Fire Ins. Co. of Pittsburgh, PA v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). Neither the legal theories alleged (such as creative allegations of

"negligence") nor the actual proof of facts in the underlying case determine the duty to defend. *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001); *Farmers Texas County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex.1997). Thus, the operative facts in a duty to defend case are limited to the allegations on the face of the underlying petition and the terms of the insurance policy. For this reason, cases such as this one are particularly suited to treatment by summary judgment.

In the Underlying Petition, twenty plaintiffs allege that the insured, Dr. Ferris, made negligent, intentional, and knowing misrepresentations in the course of selling lots in a subdivision he developed named the Nueces Park subdivision. *See* Underlying Petition at 3; Ex. A. The Underlying Petition alleges the following specific facts:

(1)   Dr. Ferris planted a pecan orchard of over 100 trees in addition to an orchard that existed when the land was subdivided. The orchard is "an important part of the integrity and beauty of the subdivision." *Id.* at 2.

(2)   Dr. Ferris marketed the lots based on misrepresentations, implied and direct, that the orchard would never be sold, that "its use would never be changed," and that it would always be part of the subdivision. *Id.* at 3.

(3)   Dr. Ferris and his agents also misrepresented that no written agreement was necessary to prevent sale of the orchard or change its use. *Id.* at 3-4. These representations induced the underlying plaintiffs to purchase lots and to invest "tens of millions of dollars in construction and improvements to their lots . . . ." *Id.* at 4.

(4)   After selling all of the lots, and "garnering massive profits his sales, Dr. Ferris has now wrongfully begun to sell of portions of the pecan orchard that fronts the subdivision." *Id.* at 3. Dr. Ferris has sold off portions of the orchard, and the trees will now be removed and replaced with a parking lot and commercial building. *Id.* This allegedly resulted in violation of an "easement by estoppel" held by plaintiffs in the orchard, a "taking and loss of use of Plaintiffs' interest" in the orchard, interference with plaintiffs' use of their property, and diminution in value of plaintiffs' land. *Id.*

Based on these facts, the Underlying Petition alleges causes of action for negligent misrepresentation, fraud, fraud in a real estate transaction, violations of the DTPA (including breaches of warranties, unconscionability, and misrepresentations), easement by estoppel/equitable servitude, and joint venture/joint enterprise (under which each defendant is liable for the other's conduct). Petition at 4-5; Ex. A. Plaintiffs seek actual damages, additional DTPA damages, treble damages, fees, costs, and interest. *Id.* at 6.

The applicable provisions of Dr. Ferris's Policy are set forth below in the relevant section.

## V.
## Argument

As noted above, in determining whether an insurer has a duty to defend its insured, Texas courts follow the "eight corners" rule, looking only to the facts pleaded against the insured in the underlying case and the terms of the insurance policy. *Guaranty National Ins. Co. v. Azrock Indus., Inc.*, 211 F.3d 239, 243 (5th Cir. 2000); *National Union Fire Ins. Co. of Pittsburgh, PA v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). The duty to defend arises only if the factual allegations of the pleading against the insured, when fairly and reasonably construed, are potentially covered by the policy. *Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141. Thus, the facts alleged, not the legal theories attached to them, such as creative allegations of "negligence," determine whether or not there is a duty to defend. *American States Ins. Co. v. Bailey*, 133 F.3d 363, 369 (5th Cir. 1998); *Farmers Texas County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997).

The duty to defend is not affected by the actual proof of facts in the underlying case ascertained before, during, or after the suit. *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001) ("an insurer's duty to defend is usually determined solely from the allegations in the most recent petition and the language of the insurance policy"); *American Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 848 (Tex. 1994). In determining whether the factual allegations in the petition satisfy policy provisions, Texas courts assume the truth of the pleadings. *Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex. 1973). Courts may not (1) read facts into the pleadings, (2) look outside the pleadings, or (3) imagine factual scenarios which might trigger coverage. *Guaranty National Ins. Co. v. Azrock Indus., Inc.*, 211 F.3d at 243.

The duty to indemnify, like the duty to defend, may be determined on the pleadings alone if the pleadings negate coverage, and the same reasons negate any possibility the insurer will have a duty to indemnify. *Farmers Texas County Mutual Insurance Company v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997); *Allen v. St. Paul Fire & Marine Ins. Co.*, 960 S.W.2d 909, 912 (Tex. App.–Texarkana 1998, no pet.).

State Farm is entitled to summary judgment on all claims of Dr. Ferris because the petition in the Underlying DTPA Action pleads facts that preclude coverage as a matter of law under the unambiguous terms of the Policy. First, the Policy requires that any covered injury be caused by an "occurrence" which is defined as an "accident." The Underlying Petition, however, alleges Dr. Ferris's destruction and sale of the orchard and related misrepresentations were intentional, volitional – and even fraudulent – acts for which the Policy does not provide coverage.

Second, the Policy contains an explicit provision precluding coverage of any damage "arising out of or in connection with a business engaged in by an insured." The Underlying Petition clearly alleges that Dr. Ferris's wrongful acts were intimately connected with and arose out of a business scheme to develop the subdivision of which the lost orchard was an integral part. As a matter of law, therefore, State Farm has no duty to defend Dr. Ferris. The absence of any duty to defend in this case also precludes any duty to indemnify Dr. Ferris. Accordingly, State Farm is entitled to summary judgment on all claims.

## A.    The Underlying Petition does not allege an "occurrence."

The insuring clause of Coverage C (Personal Liability) of the Policy provides coverage only "[i]f a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies . . . ." Endorsement HO-210 at 2; Ex. B. The Policy defines "bodily injury" as "bodily harm, sickness or disease. This includes required care, loss of services and death that results." *Id.* Under this definition, it is undisputed that the Underlying Petition does not allege "bodily injury."

Further, even if the Underlying Petition alleges "property damage," which State Farm does not concede,[1] there is no coverage because the Underlying Petition does not allege an "occurrence." "Coverage C" of the Policy applies only if "bodily injury" or "property damage" was caused by an

---

[1] In cases where an insured/seller of real property misrepresents the condition of the property and the buyer sues the seller for the loss in value of the property, Texas courts hold the injury is economic only and not within the definition of "property damage." *See, e.g., State Farm Lloyds v. Kessler*, 932 S.W.2d 732, 738 (Tex. App.–Fort Worth 1996, writ denied) (holding claims of misrepresentations in sale of property did not cause the property defects and constituted mere economic loss not covered by homeowners' policy definition of "property damage"); *Clemons v. State Farm Fire and Casualty Co.*, 879 S.W.2d 385 (Tex. App.--Houston [14th Dist.] 1994, no writ) (suit against insured, head of homeowners association, for allowing adjoining homeowner to build in violation of deed restrictions and set-back requirements was economic injury not "property damage" within the meaning of a homeowners' policy).

"occurrence." Endorsement HO-210 at 2, Ex. B. The Policy defines the term "occurrence" as "an accident, including exposure to conditions, which results in bodily injury or property damage during the policy period." Policy Definition No. 6 at 1.

The Petition in the Underlying DTPA Action does not allege an "occurrence" under this definition. Although the Policy does not define the word "accident," courts give the term its plain, ordinary, and generally accepted meaning. *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 472 (5th Cir. 2001). Thus, Texas courts define the term "occurrence" as some unexpected, unforeseen, or undesigned event. *Argonaut v. Southwest Ins. Co. v. Maupin,* 500 S.W.2d 633, 634 (Tex. 1973). The standard that determines whether an accident has been alleged is an objective one: "whether an event is accidental is determined by its effect . . .; an effect that 'cannot be reasonably anticipated from the use of [the means that produced it], an effect which the actor did not intend to produce and which <u>he cannot be charged with the design of producing,</u> is produced by accidental means.'" *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 823, 827 (Tex. 1997) (quoting *Republic National Life Ins. Co. v. Heyward,* 536 S.W.2d 549, 555 (Tex. 1976)) (emphasis in original).

In *Trinity,* the Court held that a photo lab employee who showed a customer's compromising personal photos to others did not accidentally invade the customer's privacy or accidentally inflict emotional distress on her because "the injury to [the customer], the invasion of her privacy, is of a type that 'ordinarily follow[s]' from the clerk's conduct." 945 S.W.2d at 828. That the insured did not subjectively expect or intend the injury is "of no consequence" in assessing whether there was an "accident" under the policy. *Trinity,* 945 S.W.2d at 828. *See also State Farm Fire & Casualty Co. v. S.S.,* 858 S.W.2d at 377

(noting that the definition of "occurrence" no longer requires that the "accident" be judged from the "standpoint of the insured.").

Trinity relied on the Court's earlier Argonaut decision, which held that an insured's trespass, committed without knowledge of the violated property interest, was not an "accident" because the insured's act of entering the property was volitional. Trinity, 945 S.W.2d at 827. The Trinity court focused on the intentional tort of trespass, observing that since the only intent relevant to that tort is the actor's intent to enter the property – not the actor's subjective awareness of the property's ownership – the trespass was not an accident. Id. Thus, Trinity indicates that an intentional tort is not an "occurrence," even if it results in subjectively unintended injuries, as long as the consequences of those acts could have been reasonably anticipated. Id. at 827.

The Underlying Petition alleges Dr. Ferris injured the plaintiffs by misrepresenting the fate of the pecan orchard and then intentionally removing trees and selling the orchard for construction of a bank parking lot. Petition at 3; Ex. A. Selling and altering property by cutting down trees are volitional acts by their very nature, just as the insured's conduct in Maupin – entering another's property without permission – was volitional. In selling the property, Dr. Ferris did what he intended to do, and he could have "reasonably anticipated" the effect of his actions. In this sense, the underlying plaintiffs' loss of use of the orchard would "ordinarily follow" from sale of the orchard and the destruction of the trees. Whether Dr. Ferris had a subjective intent to injure the plaintiffs is irrelevant. Trinity, 945 S.W.2d at 828. Thus, regardless of whether Dr. Ferris himself subjectively recognized the homeowners' property interest in the orchard, the objective test of Trinity is satisfied by the allegations of the Underlying Petition. See Maupin,

500 S.W.2d at 635 ("Where acts are voluntary and intentional and the injury is the natural result of the act, the result was not caused by accident even though that result may have been unexpected, unforeseen and unintended"). Thus, the Petition does not allege an "occurrence."

Likewise, the Petition's allegations of fraudulent misrepresentations, and knowing and intentional conduct on the part of Dr. Ferris are not "accidents" under Texas law. *See, e.g., Columbia Mutual Insurance Company v. Fiesta Mart, Inc.*, 987 F.2d 1124, 1128 (5th Cir. 1993) (exposure to "fraud" does not constitute an "occurrence"); *Potomac Ins. Co. v. Peppers*, 890 F. Supp. 634 (S.D. Tex. 1995) (allegation of "fraud" did not fall within liability policy's definition of "occurrence"); *State Farm Lloyds v. Kessler*, 932 S.W.2d 732, 738, n. 33(Tex. App.–Fort Worth 1996, writ denied) (holding carrier had no duty to defend the seller of a house against misrepresentation claims because the buyers' damages "did not result from an occurrence" because all of the insured/sellers' misrepresentations were "voluntary and intentional"); *Houston Petroleum v. Highlands Ins.*, 830 S.W.2d 153, 156 (Tex. App.–Houston [1st Dist.] 1990, writ denied) ("exposure to 'fraudulent promises, false representations, and untrue statements' does not, as a matter of law, fall within the plain meaning of the definition of 'occurrence.'").

In the present case, the claims in the Underlying Petition do not trigger the "occurrence" requirement because the facts alleged indicate Dr. Ferris intentionally represented that the orchard would not be sold, then proceeded to sell the orchard, and could have reasonably foreseen that this sale would deprive the plaintiffs of the use of the orchard. *See, e.g., Farmers Texas County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex.1997) (courts focus on factual allegations, not legal theories). As a matter of law, therefore, State Farm has no duty to defend Dr. Ferris in the Underlying DTPA Action.

**B.    In the alternative, the "business pursuits" exclusion precludes a duty to defend as a matter of law.**

In the alternative, State Farm has no duty to defend because the "business pursuits" exclusion of the Policy precludes coverage as a matter of law. Dr. Ferris's Policy, like all standard Texas homeowners policies, excludes coverage for all "business pursuits" of the insured. The Underlying Petition, however, makes clear that Dr. Ferris is being sued for activities intimately connected with his business of developing the Nueces Park Subdivision.

Exclusion 1.b of Endorsement HO-210 of the Policy precludes coverage for "bodily injury or property damage arising out of or in connection with a business engaged in by an insured." Policy, Endorsement HO-210 at 2; Ex. B. The exclusion contains an exception providing that it "does not apply to activities which are ordinarily incidental to non-business pursuits." *Id.*

In *Mid-Century Insurance Co. v. Lindsey,* 997 S.W.2d 153, 156 (Tex. 1999), the Texas Supreme Court held that for liability to "arise out of" something, "a causal connection or relation must exist between the accident or injury" and a rationally connected hazard. Similarly, the Fifth Circuit holds the words "arising out of," when used in an insurance policy, are "broad, general, and comprehensive terms effecting broad coverage" and are "understood to mean 'originating from,' 'having its origin in,' 'growing out of' or 'flowing from.'" *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 370 (5th Cir.1998) (quoting *Red Ball Motor Freight, Inc. v. Employers Mut. Liab. Ins. Co.*, 189 F.2d 374, 378 (5th Cir.1951)). The phrase "arising out of" means that "a claim need only bear an incidental relationship to the described conduct for the exclusion to apply." *Scottsdale Ins. Co. v. Texas Sec. Concepts & Investigation,* 173 F.3d 941, 943 (5th Cir.1999). Thus, in order for the "business pursuits" exclusion to preclude coverage,

Defendant State Farm Lloyds' Motion for Summary Judgment
Page 11

a Texas court need only find a causal connection between the injuries alleged by the underlying plaintiffs and the insured's business and that such damage was not caused by an activity ordinarily incidental to a non-business pursuit. *See Burt v. Aetna Cas. and Surety Co.*, 720 F. Supp. 82, 85 (N.D. Tex. 1989).

Definition 2 of the Policy Endorsement defines "business" to include "trade, profession or occupation, excluding farming." Endorsement HO-210 at 2; Ex. B. The Policy does not define the words "trade, profession or occupation," though it does define "farming." In *United Services Auto. Ass'n v. Pennington*, 810 S.W.2d 777, 779 (Tex. App.–San Antonio 1991, writ denied), the court defined the term "business pursuit" as encompassing two elements: (1) continuity or regularity of the activity, and (2) a profit motive, usually as a means of livelihood, gainful employment, earning a living, procuring subsistence or financial gain, a commercial transaction or engagement. *Id.* (citations omitted).

Thus, in *State Farm Fire & Casualty Co. v. Vaughan*, 968 S.W.2d 931 (Tex. 1998), the Supreme Court held that, as a matter of law, the "business pursuits" exclusion barred coverage for the negligence of an insured who, while operating a home day-care service, placed a child in a closet and left the home. The Court observed that the "alleged negligence was leaving the child completely unsupervised while being paid to care for the child." *Id.* at 934. In *Vaughan*, "the way [the insured] conducted her 'business pursuit' [was] the litigation's focus." *Id.* The Court therefore affirmed summary judgment in favor of the carrier.

On similar facts, Judge Nancy Atlas of the Southern District has held that there was no duty to defend or indemnify based on the business pursuits exclusion in a homeowners policy. *See Thom v. State Farm Lloyds*, 10 F.Supp.2d 693, 701-702 (S.D. Tex. 1997). In *Thom*, the insured was sued for alleged

negligent supervision and misrepresentations in connection with construction and sale of a house with a defective foundation by the insured's closely held corporation. The insured sought coverage under his homeowners policy, which contained a "business pursuits" exclusion identical to that in Dr. Ferris's policy. The court held that the exclusion unambiguously precluded coverage for all allegations against the insured, including those for negligent supervision and negligent misrepresentations, because the insured's liability arose out of the insured's business of constructing and selling houses, which extended to proper construction of an adequate foundation. *Id.* Accordingly, the court held State Farm had no duty to defend or indemnify the insured, based purely on the allegations of the petition against the insured. *Id.*

The allegations of the Underlying Petition make clear that the development of the Nueces Park Subdivision was a business pursuit of Dr. Ferris. The Petition alleges Dr. Ferris "subdivided a large tract of land," planted "in excess of 100 pecan trees" on the land, "placed a sign in the orchard advertising Nueces Park subdivision," and "marketed" and sold the tracts "for between $33,000.00 and $43,000.00 each," thus "garnering massive profits from his sales." Petition at 3; Ex. A. These allegations and the nature of real estate development make clear that Dr. Ferris's conduct in developing, marketing and selling lots in the subdivision was a "business pursuit."[2] Nothing in the Petition indicates that the marketing and selling

---

[2]Numerous courts have held that the "business pursuits" exclusion precludes coverage for investment activities of the insured even when those activities are not connected to the insured's stated occupation. *See* 7A John A. Appelman, INSURANCE LAW AND PRACTICE § 4501.10 (Berdal Ed.) ("[t]he business activity need not be the sole occupation and part-time activities are excluded"); *In re San Juan Dupont Plaza Hotel Fire Litigation*, 789 F.Supp. 1212, 1220 (D.P.R. 1992) (holding that regardless of whether insured was "gainfully employed in another trade, business or occupation," the insured's investment activities in a limited partnership motivated by profit were excluded "business pursuits"); *Scott & Scott, Inc. v. City of Mountain Brook*, 2002 WL 31002853 at *16 (Ala. 2002) (passive investment in real estate partnership was an excluded "business pursuit"); *Vallas v. Cincinnati Ins. Co.*, 624 So.2d 568, 571 (Ala. 1993) (insured's investment in limited partnership formed to buy and sell real estate was a "business pursuit" excluded under standard homeowner's policy); *Bob Useldinger & Sons, Inc. v. Hangsleben*, 505 N.W.2d 323, 328 (Minn. 1993)

**Defendant State Farm Lloyds' Motion for Summary Judgment**
**Page 13**

of subdivision parcels was ordinarily incidental to a non-business pursuit. As in *Vaughan*, the focus of the underlying litigation is the way the insured conducted his business of real estate development. Thus, the Petition unambiguously alleges Dr. Ferris injured plaintiffs in the course of a business pursuit, and this precludes coverage under the Homeowners Policy. As a matter of law, State Farm has no duty to defend Dr. Ferris in the Underlying DTPA Action.

**C.     Because there is no duty to defend, there is no duty to indemnify.**

State Farm seeks a declaration that it has no duty to duty to defend Dr. Ferris or to indemnify him ultimately for any damages assessed against him in the Underlying DTPA Action.

The duty to indemnify an insured also may be determined on the pleadings alone – that is, before the insured's liability is determined in the underlying liability lawsuit – if the pleadings negate coverage and the same reasons negate any possibility the insurer will have a duty to indemnify. *Farmers Texas County*

---

("business pursuits" exclusion applied even though the insured merely invested in farming operation without farming directly); *Williams v. State Farm Fire and Cas. Co.*, 180 Wis.2d 221, 509 N.W.2d 294, 298 (Wis. App. 1993) (insured's investment in apartment complex joint venture fell within the "business pursuits" exclusion of the homeowner's policy); *Grossman v. American Family Mut. Ins. Co.*, 461 N.W.2d 489, 490 (Minn. 1990) ("business pursuits" exclusion of homeowner's policy precluded coverage for claims arising out of policyholders' investment in real estate partnership); *Insurance Co. of Ill. v. Markogiannakis*, 188 Ill.App.3d 643, 136 Ill.Dec. 307, 544 N.E.2d 1082 (1989) (professional musician's activity of renting an investment property was a business pursuit because it was "a continuous or regular activity, done for ... profit" even though it was a "part-time or supplemental income activit[y]"); *State Farm Fire & Casualty Co. v. Drasin*, 152 Cal.App.3d 864, 199 Cal.Rptr. 749, 752 (Cal. App. 1984) (holding that "business pursuit" need not be insured's sole or primary occupation); *Shapiro v. Glens Falls Ins. Co.*, 47 A.D.2d 856, 365 N.Y.S.2d 892 (1975), *aff'd*, 39 N.Y.2d 204, 383 N.Y.S.2d 263, 347 N.E.2d 624 (1976) (exclusion applicable to a limited partner's investment in real estate because "for purposes of the 'business pursuits' exclusion, the 'business' engaged in by [the insured] need not necessarily be limited to his sole occupation or employment").

*Mutual Insurance Company v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997) (holding insurer's lack of duty

to indemnify its insured was justiciable prior to resolution of underlying action where insurer had no duty

to defend and no facts could be developed that would bring drive-by shooting within policy's coverage);

*Allen v. St. Paul Fire & Marine Ins. Co.*, 960 S.W.2d 909, 912 (Tex. App. – Texarkana 1998, no pet.).

Texas courts, in both the state and federal systems, have consistently followed *Griffin*'s lead on this issue,

foreclosing any duty to indemnify based solely on the pleadings against the insured. *See, e.g., Nutmeg Ins.*

*Co. v. Clear Lake City Water Authority*, 229 F.Supp.2d 668, 697 (S.D. Tex. 2002) (insured's failure

to demonstrate that insurer had a duty to defend against any potential claims in the suit below meant insurer

had no duty to indemnify insured either); *State Farm Fire and Cas. Co. v. Brooks*, 43 F.Supp.2d 695,

704 (E.D. Tex. 1998) (insurer had no duty to defend, and, therefore, no duty to indemnify, insured in state

court suit alleging sexual assault); *Collier v. Allstate County Mut. Ins. Co.*,  64 S.W.3d 54, 62 (Tex.

App.–Ft. Worth 2001, no pet.) (if facts alleged in the underlying suit are insufficient to invoke the duty to

defend, then proof of all of those same facts will not invoke the insurer's duty to indemnify); *State Farm*

*Lloyds v. Borum*, 53 S.W.3d 877, 889 (Tex. App.–Dallas 2001, pet. denied) (holding lack of duty to

defend allegations of injury arising out of sexual molestation by insured also negated any duty to indemnify);

*Folsom Inv., Inc. v. Am. Motorists Ins. Co.*, 26 S.W.3d 556, 559 (Tex. App.–Dallas 2000, no pet.) ("If

the underlying petition does not state factual allegations sufficient to invoke the duty to defend, then even

proof of all of those allegations could not invoke the insurer's duty to indemnify").

As discussed above, the court in *Thom v. State Farm Lloyds*, 10 F.Supp.2d 693, 701-702 (S.D. Tex. 1997) held, as a matter of law, that State Farm had no duty to defend or indemnify the insured, based purely on the allegations of the petition against the insured because the insured's liability arose out of the insured's business of constructing and selling houses, which extended to proper construction of an adequate foundation. *Id.* There is no question in this case that Dr. Ferris is being sued for actions arising out of and necessary to his business pursuits in developing a housing subdivision. Because the same reasons that negate a duty to defend also make it clear that, no matter what facts are proved in the trial of the Underlying DTPA Action, State Farm will never have a duty to indemnify Dr. Ferris under the Policy. Accordingly, State Farm is entitled to summary judgment and a declaration that it has no duty to defend or indemnify Dr. Ferris in connection with the underlying suit.

## VI.
## Conclusion and Prayer

Defendant and Counterclaimant State Farm therefore respectfully prays that the Court declare that State Farm has no duty under the Policy to defend or indemnify Dr. Ferris in connection with the Underlying DTPA Action, that Dr. Ferris take nothing by reason of this action, and that State Farm be awarded its reasonable and necessary attorneys fees, costs of court, and such other relief to which State Farm is entitled.

Respectfully submitted,

HANNA & PLAUT, L.L.P.
The Littlefield Building
106 East Sixth Street, Suite 520
Austin, Texas 78701
Telephone:    (512) 472-7700
Facsimile:    (512) 472-0205

By:    _____
       David L. Plaut
       Attorney-in-Charge
       Southern District I.D. No. 13353
       State Bar No. 16066030
       Catherine L. Hanna
       Southern District I.D. No. 13577
       State Bar No. 08918280

ATTORNEYS FOR DEFENDANT
STATE FARM LLOYDS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded by certified mail, return receipt requested, on this __11 TH__ day of February 2003 to:

Mr. E.R. Fleuriet
Mr. Richard D. Schell
The Fleuriet Schell Law Firm, LLP
621 E. Tyler
Harlingen, TX 78550

_____
David L. Plaut

**Defendant State Farm Lloyds' Motion for Summary Judgment**
**Page 17**

CAUSE NO. 2002-03-001003-B    CERTIFIED COPY

| | | |
|---|---|---|
| ALDON WILLIAMS, M.D., DENISE | § | IN THE DISTRICT COURT |
| WILLIAMS, THOMAS STIRZAKER, | § | |
| PHD, REBECCA STIRZAKER, CURTIS | § | |
| MAYNARD, M.D., MELBA MAYNARD, | § | |
| ROMULO RANGEL, DVM, YSABEL | § | |
| RANGEL, GREG ROWIN, D.O., JUDY | § | |
| ROWIN, MADHU SINGH, NILA WIPF, | § | |
| GEORGE EUBANKS, PENNI L. | § | 138TH JUDICIAL DISTRICT |
| EUBANKS, MIKE MATTAR | § | |
| ELAYNE MATTAR, GLEN DIVIN, | § | |
| CANDY DIVIN, VICTOR VILLARREAL | § | |
| AND ALAYNE VILLARREAL | § | |
| | § | |
| V. | § | |
| | § | |
| JOHN FERRIS, M.D., FRANK FERRIS, | § | |
| JOYCE BENSON D/B/A | § | |
| IMPACT PROPERTIES, AND | § | |
| BETTY SCOTT, D/BA/ | § | |
| IMPACT PROPERTIES | § | CAMERON COUNTY, TEXAS |



FILED 3 3O O'CLOCK P M
AURORA DE LA GARZA, DIST. CLERK
SEP 1 1 2002

## PLAINTIFFS' FOURTH AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

    Plaintiffs Aldon Williams, M.D., et al. file this their Fourth Amended Petition. For cause of action, they would respectfully show the Honorable Court as follows:

### I.

### DISCOVERY CONTROL PLAN

Plaintiffs intend to conduct discovery pursuant to a level three discovery control plan.

### II.

### PARTIES

Plaintiffs are individuals residing in Cameron County, Texas.

Defendant John Ferris, M.D. is an individual residing in Cameron County, Texas. He has



EXHIBIT
A

already been served with process and made an appearance.    CERTIFIED COPY

Defendant Frank Ferris is an individual residing in Cameron County, Texas. He may be served with process at 5008 Sumatra Circle, Harlingen, Texas 78552.

Defendant Joyce Benson d/b/a Impact Properties is an individual residing in Cameron County, Texas. She may be served at 1212 N. Stuart Place Road, Harlingen, Texas 78552.

Defendant Betty Scott d/b/a Impact Properties is an individual residing in Cameron County, Texas. She may be served at 1300 Palm Valley Drive East, Harlingen, Texas 78550.

### III.

### JURISDICTION AND VENUE

The Court has *in personam* jurisdiction over Defendants because they were Texas residents when the causes of action accrued.

The Court has subject matter jurisdiction because the damages are above the Court's jurisdictional minimum.

Venue is proper in Cameron County because Defendant John Ferris, M.D. resides in the county.

### IV.

### FACTS

This lawsuit arises out of Defendants' negligent, intentional and/or knowing misrepresentations regarding the sale of lots in the Nueces Park Subdivision. In 1992, Dr. John Ferris subdivided a large tract of land located west of Stuart Place Road and named the subdivision Nueces Park. Dr. Ferris planted in excess of 100 pecan trees in the subdivision, and there was a mature pecan orchard at the subdivision's entrance. The orchard acts as a buffer from the traffic on Stuart Place Drive and is aesthetically an important part of the integrity and beauty of the

subdivision.                                                   CERTIFIED COPY

Dr. Farris placed a sign in the orchard advertising Nueces Park subdivision. He further marketed and made misrepresentations to the purchasers of the lots that the orchard would never be sold, and that its use would never be changed. He further represented that the orchard was part of the subdivision. These representations created an equitable easement.

Defendants Frank Ferris and Impact Properties assisted in marketing and selling the properties. They also made negligent and/or fraudulent misrepresentations regarding the pecan orchard. They stated and/or implied that the pecan orchard would always remain there, and failed to disclose that Dr. Ferris could allegedly remove it at will.

As a result of Defendants' representations, Plaintiffs were induced to purchase lots that were sold by Defendants for between $33,000.00 and $43,000.00 each. After selling all of the lots, and garnering massive profits from his sales, Dr. Ferris has now wrongfully begun to sell off portions of the pecan orchard that fronts the subdivision.

Based upon information and belief, Dr. Ferris has already sold off a portion of the orchard to First National Bank of Mercedes. Eventually, the trees will be removed and a parking lot and a commercial building will adorn the entrance instead of pecan trees. This will markedly diminish the value of Plaintiffs' land.

Dr. Ferris actions also result in a taking and loss of use of Plaintiffs' interest of the pecan orchard. Plaintiffs have an interest in the orchard through the easement by estoppel, which was created by Defendants representations. Defendants are interfering with Plaintiffs' use of their property by attempting to disclaim the easement and sell the property without encumbering it with the equitable easement.

As a result of Defendants' negligent, fraudulent, intentional and/or misleading

CERTIFIED COPY

misrepresentations, Plaintiffs' were induced to purchase lots from Defendants. Defendants misrepresented that no written agreement was necessary to prevent the pecan orchard from being sold or have its use changed. Plaintiffs, relying upon these misrepresentations, have invested tens of millions of dollars in construction and improvements to their lots, along with the money they paid to initially purchase the lots.

Plaintiffs Mike Mattar and Elayne Mattar did not deal with Impact Properties, and make no claims against Joyce Benson d/b/a Impact Properties and Betty Scott d/b/a Impact Properties.

Plaintiff Aldon Williams, M.D. makes no claims against Joyce Benson d/b/a Impact Properties, but does claim against Betty Scott d/b/a Impact Properties.

## V.

## CAUSES OF ACTION

### Negligent Misrepresentation

Defendants negligently made misrepresentations, and material omissions in the face of a duty to disclose, as set forth above. As a direct and proximate result of these misrepresentations and omissions, Plaintiffs relied upon Defendants' statements and omission and suffered damages in an amount in excess of the Court's jurisdictional minimum.

### Fraud

Pleading in the alternative, if Defendants had actual knowledge of the falsity of their misrepresentations and omissions, they committed fraud. Plaintiffs relied upon the misrepresentations and omissions, and as a result suffered damages.

### Fraud in a Real Estate Transaction

Pleading in the alternative, if Defendants had actual knowledge of the falsity of their misrepresentations and omissions, they committed fraud in a real estate transaction. Plaintiffs

CERTIFIED COPY

entered into real estate transactions–namely, the purchase of their lots in Nueces Park subdivision–as a result of their reliance on Defendants' misrepresentations and omissions. As a direct and proximate result thereof, Plaintiffs suffered damages.

## DTPA

Plaintiffs sought to acquire–and did acquire–goods and services from Defendants. Defendants engaged in numerous violations of the Texas Deceptive Trade Practices Act, including breaches of express and implied warranties, unconscionability, and representing that goods and services had qualities that they did not in fact have. Plaintiffs relied upon Defendants' deceptive representations and omissions, and as a direct result thereof suffered damages.

## Easement by Estoppel/Equitable Servitude

Defendant Ferris made misrepresentations and material omissions in the face of a duty to disclose regarding the future use of the pecan orchard. Specifically, he stated and implied that the pecan orchard would always be remain an orchard, and failed to disclose that he could sell it as commercial property and that it was not, in fact, part of the subdivision. Most Plaintiffs relied upon these misrepresentations and omissions. Therefore, there is an easement by estoppel on the land on which the orchard sat. Under this easement, the land cannot be used for any purpose other than a pecan orchard. Further, the land is subject to an equitable servitude preventing it from being used for anything other than a pecan orchard.

## Joint Venture/Joint Enterprise

Defendants entered into a joint venture and/or joint enterprise in developing and marketing the Nueces Park Subdivision. Therefore, they are vicariously liable for each other's tortious conduct.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that citation be issued and

CERTIFIED COPY

Defendant be served, and that, after trial on the merits, that Plaintiffs have judgment against Defendants, jointly and severally, for their actual damages, additional DTPA damages, treble damages, attorney's fees, court costs, prejudgment interest, and post-judgment interest.

Respectfully submitted,

**MICHAEL R. COWEN, P.C.**
765 E. 7th Street, Suite A
Brownsville, Texas 78520
Telephone (956) 541-4981
Facsimile (956) 504-3674

Michael R. Cowen
Texas Bar No. 00795306

ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I, Michael R. Cowen, hereby certify that I sent a copy of this document to opposing counsel on this the ___11th___ day of September, 2002, as indicated below:

Mr. E. R. Fleuriet                        **Via Fax No.:  956-421-4339**
THE FLEURIET SCHELL LAW FIRM,  LLP        **& Regular U.S. Mail**
621 E. Tyler
Harlingen, Tx. 78550

Michael R. Cowen

A TRUE COPY I CERTIFY
AURORA DE LA GARZA, CLERK
DISTRICT COURT CAMERON COUNTY, TEXAS
DEPUTY

## CAUSE NO. 2002-11-4721-G

| | | |
|---|---|---|
| JOHN A. FERRIS, JR. | § | IN THE 404TH JUDICIAL |
| | § | |
| | § | |
| VS. | § | DISTRICT COURT OF |
| | § | |
| | § | |
| STATE FARM LLOYDS, | § | CAMERON COUNTY, TEXAS |

## <u>AFFIDAVIT OF CHRISTINE RODRIGUEZ</u>
### BUSINESS RECORDS

Personally, appeared before the undersigned officer, duly authorized by law to administer oaths, came Christine Rodriguez, who, upon being duly sworn, states and deposes of her own personal knowledge as follows:

#### 1.

My name is Christine Rodriguez. I am a Senior Personal Lines Underwriter and my office is located at 8900 Amberglen Boulevard, Austin, Williamson County, Texas 78729. I am of sound mind, over the age of 18 years, have never been convicted of a felony or crime of moral turpitude and am competent to make this affidavit. Further, this affidavit is true and correct based upon my personal knowledge of the matters set forth herein.

#### 2.

I am a custodian of records for State Farm Lloyds. The attached Policy Number 83-p8-1982-6 is a true and correct copy of the policy issued by State Farm Lloyds to John A. & Sarah A. Ferris, for the policy period of March 31, 2001 to March 12, 2002.

Page 1



EXHIBIT

exhibit

B

3.

The 31 pages of records which are attached to this affidavit were kept under my care, supervision, direction, and/or control and were kept by or on behalf of State Farm Lloyds in the regular course of its business. The memoranda, reports, notations and entries contained in these records were made at or near the time of the event reflected in these records or reasonably soon thereafter. It was in the regular course of business to have employees or representatives acting for or on behalf of State Farm Lloyds with knowledge of the act or event to make the memoranda, reports, notations, and entries contained in these records, or to transmit information concerning these matters to other employees or representatives acting for or on behalf of State Farm Lloyds designated to receive the information for the purpose of including it in the records of State Farm Lloyds.

4.

The 31 pages of records attached are true and correct copies of the business records as described in this affidavit.

Signed this _____ day of _____, 2002.

_____
Christine Rodriguez

SWORN TO AND SUBSCRIBED before me, the undersigned authority, on this 19th day of December, 2002, by Christine Rodriguez who has proved to me through the following identity card _____, or who is personally known to me to be the person whose name is subscribed to this document.

_____
NOTARY PUBLIC

COMMISSION EXPIRES: 2006

VALERIE C GONZALES
MY COMMISSION EXPIRES
September 9, 2006

Page 2

Policy Number
83-P8-1982-6

**DECLARATION PAGE** ☐ NEW ☐ RENEWAL ☒ AMENDED-DATE
08/15/2001

STATE FARM LLOYDS
8900 AMBERGLEN BOULEVARD, AUSTIN TX 78729-1110
A LLOYDS COMPANY IN DALLAS, TEXAS



NAMED INSURED/MAILING ADDRESS
8436-F116 D
FERRIS, JOHN A & SARAH A
PO BOX 530567
HARLINGEN TX 78553-0567

MORTGAGEE

CIT GROUP/CONSUMER FINANCE INC
ITS SUCC &/OR ASSIGNS ATIMA
PO BOX 659
CINCINNATI OH 45201-0659

TEXAS HOMEOWNERS POLICY - FORM B  01/96

POLICY PERIOD
EFFECTIVE DATE: 03/12/2001
EXPIRATION DATE: 03/12/2002

AT 12:01 A.M. STANDARD TIME AT THE LOCATION OF
THE RESIDENCE PREMISES/DWELLING
YOUR POLICY IS AMENDED 08/15/2001
PREMIUM ADJUSTMENT

RESIDENCE PREMISES/DWELLING
LOT BLOCK    ADDITION
RURAL ROUTE 4
718 CARO CR
HARLINGEN TX 78552-8942

CONSTRUCTION: VENEER        PPC:

KEY-RATE:
INSIDE/OUTSIDE CITY-LIMITS: OUTSIDE

| COVERAGES | LIMIT OF LIABILITY | PREMIUMS |
|---|---|---|
| **SECTION I PROPERTY** | | |
| COVERAGE A DWELLING | $ 239,100 | |
| OTHER STRUCTURES | $ 23,910 | |
| COVERAGE B PERSONAL PROPERTY | $ 143,460 | |
| PERSONAL PROPERTY OFF PREMISES | $ 14,346 | |
| **SECTION II LIABILITY** | | |
| COVERAGE C PERSONAL LIABILITY (EACH OCCURRENCE) | $ 100,000 | |
| COVERAGE D MEDICAL PAYMENTS TO OTHERS (EACH PERSON) | $ 5,000 | |
| INCREASED LIABILITY LIMITS | | |
| LOSS OF USE COVERAGE | $ 47,820 | |
| OTHER RESIDENTIAL PREMISES-LOCATION | | |

| DEDUCTIBLES (SECTION I ONLY) | AMOUNT OF DEDUCTIBLE | DEDUCTIBLE ADJUSTMENT PREMIUM | BASIC PREMIUM ENDORSEMENT PREMIUM DECREASE | |
|---|---|---|---|---|
| DEDUCTIBLE CLAUSE 1 | $ 11,955 | | | $ 2.00 |
| DEDUCTIBLE CLAUSE 2 | $ 11,955 | | | |
| DEDUCTIBLE CLAUSE 3 | | | | |

| OTHER COVERAGES AND ENDORSEMENTS ENDORSEMENT TITLE AND NUMBER | | LIMIT OF LIABILITY | PREMIUMS |
|---|---|---|---|
| REPLACEMENT COST PERSONAL | HO-101 | 10/93 | |
| RESIDENCE GLASS ENDORSEMENT | HO-105 | 07/92 | |
| AGREED AMOUNT ON DWELLING | HO-102 | 07/92 | |
| BLDG ORDINANCE OR LAW - 10% | FE-5587 | 08/98 | |
| FARMERS PERSONAL LIABILITY | HO-210 | 10/93 | |
| AMENDATORY ENDORSEMENT | HO-230 | 07/94 | |

TOTAL POLICY PREMIUM  $  1,356.00

**OTHER COVERAGES, LIMITS AND EXCLUSIONS APPLY - REFER TO YOUR POLICY**

PREPARED
DEC 09 2002
MHC

CONTINUED ON SUPPLEMENTAL DECLARATIONS PAGE
COUNTERSIGNED
BY                                                    AGENT

FP-7012C  AGENCY AT  AUSTIN TEXAS

**JOHN FTACEK**
**956-797-2881**

SUPPLEMENTAL DECLARATION PAGE ☐ NEW / ☐ RENEWAL ☒



### STATE FARM LLOYDS
8900 AMBERGLEN BOULEVARD, AUSTIN TX 78729-1110
A LLOYDS COMPANY IN DALLAS, TEXAS

NAMED INSURED/MAILING ADDRESS
8436-F116  D
FERRIS, JOHN A & SARAH A
PO BOX 530567
HARLINGEN TX    78553-0567

MORTGAGEE

CIT GROUP/CONSUMER FINANCE INC
ITS SUCC &/OR ASSIGNS ATIMA
PO BOX 659
CINCINNATI OH    45201-0659

TEXAS HOMEOWNERS POLICY - FORM B        01/96

| | CREDIT | PERCENTAGE |
|---|---|---|
| RENEWAL | | 10% |

**OTHER COVERAGES, LIMITS AND EXCLUSIONS APPLY - REFER TO YOUR POLICY**

PREPARED
12/09/2002
MHC

AGENT

JOHN FTACEK
956-797-2881

# YOUR
# TEXAS





**HOMEOWNERS**

# POLICY

# QUICK REFERENCE
## TEXAS HOMEOWNERS POLICY - FORM B

Insuring Agreement ................................................ 1
Definitions............................................................ 1

## SECTION I - PROPERTY COVERAGE

Coverage A
Dwelling ...................................................... 1
Other Structures........................................... 1
Coverage B
Personal Property ........................................ 2
Personal Property Off Premises ..................... 2
Special Limits of Liability .................................. 2
Property Not Covered....................................... 2
Extensions of Coverage
Debris Removal ............................................ 2
Loss of Use.................................................. 2
Reasonable Repairs ..................................... 3
Trees, Shrubs, Plants and Lawns ................. 3
Property Removed ........................................ 3
Consequential Loss ...................................... 3
Automatic Removal ....................................... 3
Perils Insured Against
Coverage A (Dwelling) ................................. 3
Coverage B (Personal Property) .................... 3

Exclusions ....................................................... 4

Deductibles ...................................................... 5

Section I - Conditions
Insurable Interest and Limit of Liability................ 5
Residential Community Property Clause ............. 5
Duties After Loss
Your Duties After Loss ............................. 5
Our Duties After Loss............................... 6
Loss Settlement............................................ 6
Loss to a Pair or Set..................................... 6
Salvage Rights ............................................. 7
Appraisal ..................................................... 7
Loss Payment............................................... 7
Catastrophe Claims ...................................... 7
Other Insurance ........................................... 7
Suit Against Us ............................................ 7
Abandonment of Property ............................. 7
Vacancy - Suspension of Coverage .............. 7
Mortgage Clause.......................................... 7
No Benefit to Bailee ..................................... 8

## SECTION II - LIABILITY COVERAGE

Coverage C (Personal Liability)......................... 8
Coverage D (Medical Payments to Others)......... 8

Exclusions
Coverage C and D Exclusions....................... 8

Coverage C Exclusions.................................... 9
Coverage D Exclusions.................................... 10

Additional Coverages
Claim Expenses............................................ 10
Imperative Medical Expenses to Others.......... 10
Damage to Property of Others....................... 10

Section II - Conditions
Limit of Liability............................................. 10
Severability of Insurance............................... 10
Duties After Loss.......................................... 10
Duties of an Injured Person ........................... 11
Payment of Claim under Coverage D.............. 11
Suit Against Us ............................................ 11
Bankruptcy of the Insured.............................. 11
Other Insurance............................................ 11
Notice of Settlement of Liability Claim............. 11

## POLICY CONDITIONS APPLYING TO SECTIONS I AND II

Policy Period ................................................... 11
Concealment or Fraud ...................................... 11
Liberalization Clause ........................................ 11
Waiver or Change of Policy Provisions ............... 11
Cancellation..................................................... 12
Refusal to Renew............................................. 12
Assignment...................................................... 12
Subrogation..................................................... 12
Death .............................................................. 12

---

### YOUR DUTIES AFTER A LOSS

**Section I:**

1. Protect the property from further damage.
2. Give prompt written notice to the company.
3. Call the police if a law has been broken.
4. Make a list of all damaged personal property, including costs.
5. If requested, obtain proof of loss form from your agent or the company and submit within 91 days of the request.

**Section II:**

1. Do not make any voluntary payments except for first aid to others at the time of the accident.
2. Give written notice to agent or company, including details about the accident and any witnesses.
3. Send copies of legal notices you receive to the company.
4. Help the company get the necessary information to make settlement.

FOR A COMPLETE LIST OF YOUR DUTIES SEE PAGES 5 AND 10 OF YOUR POLICY.

---

Prescribed by the Texas Department of Insurance
Homeowners Form B - Effective July 8, 1992
(Revised January 1, 1996)

**HOMEOWNERS FORM B**

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown on the declarations page and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. **"Bodily injury"** means bodily harm, sickness or disease. This includes required care, loss of services and death that results.

2. **"Business"** includes trade, profession or occupation.

3. **"Business day"**, when used in this policy means a day other than a Saturday, Sunday or holiday recognized by the state of Texas.

4. **"Insured"** means you and residents of your household who are:

   a. your relatives; or

   b. other persons under the age of 21 and in the care of any person named above.

   Under Section II Liability, **"insured"** also means:

   c. any person or organization legally responsible for animals or watercraft to which this policy applies. You or a person included in 4.a. or 4.b. above must own the animal or watercraft. A person or organization using or having custody of these animals or watercraft without consent of the owner is not an **insured.**

   d. With respect to any vehicle to which this policy applies:

      (1) any employee of an **insured** while engaged in the employment of the **insured**; or

      (2) any other person using the vehicle on an **insured location** with your consent.

5. **"Insured location"** means:

   a. the **residence premises.**

   b. the part of other premises, other structures and grounds you use as a residence and:

   (1) which is shown on the declarations page; or

   (2) which you acquire during the policy period for your use as a residence.

   c. any premises you use in connection with a premises in 5.a. or 5.b. above.

   d. any part of a premises:

      (1) not owned by an **insured**; and

      (2) where an **insured** is temporarily residing.

   e. vacant land, other than farm land, owned by or rented to an **insured**.

   f. land owned by or rented to an **insured** on which a one or two family dwelling is being built as a residence for an **insured**.

   g. individual or family cemetery plots or burial vaults of an **insured**.

   h. any part of a premises occasionally rented to an **insured** for other than **business** use.

6. **"Occurrence"** means an accident, including exposure to conditions, which results in **bodily injury** or **property damage** during the policy period.

7. **"Property damage"** means injury to, destruction of, or loss of use of property.

8. **"Residence employee"** means an employee of an **insured** who performs duties related to the ownership, maintenance or use of the **residence premises**, including maintenance or use of a motor vehicle. This includes employees who perform similar duties elsewhere for an **insured**. This does not include employees while performing duties related to the **business** of an **insured**.

9. **"Residence premises"** means the **residence premises** shown on the declarations page. This includes the one or two family dwelling, including other structures, and grounds where an **insured** resides or intends to reside within 60 days after the effective date of this policy.

## SECTION I - PROPERTY COVERAGE

### COVERAGE A (DWELLING)

We cover:

1. the dwelling on the **residence premises** shown on the declarations page including structures attached to the dwelling.

2. other structures on the **residence premises** set apart from the dwelling by clear space. This includes

structures connected to the dwelling by only a fence, utility line or similar connection.

The total limit of liability for other structures is the limit of liability shown on the declaration page or 10% of the Coverage A (Dwelling) limit of liability, whichever is greater. This is additional insurance and does not reduce the Coverage A (Dwelling) limit of liability.

We do not cover other structures:

   a. used for business purposes; or

   b. wholly rented to any person, unless used solely as a private garage.

3. motor or engine propelled vehicles or machines designed for movement on land, including attached machinery or equipment.

a. used for business purpose.

b. wholly rented to any person unless used solely as a private garage.

3. wall to wall carpeting attached to a building on the **residence premises**.

## COVERAGE B (PERSONAL PROPERTY)

We cover:

1. a. personal property owned, worn or used by an **insured** while on the **residence premises**. This includes window or wall air conditioning units.

   b. at your request, property of others while the property is on the part of the **residence premises** occupied by an **insured**.

2. a. personal property owned, worn or used by an **insured** anywhere in the world.

   b. at your request, personal property of a **residence employee** when:

      (1) the property is away from the residence premises of the **residence employee** and in the control of the **residence employee**; and

      (2) while the **residence employee** is performing work for you.

      Our total limit of liability under 2.a. and 2.b. above is 10% of the Coverage B (Personal Property) limit of liability or $1000, whichever is greater. This is additional insurance and does not reduce the Coverage B (Personal Property) limit of liability.

**SPECIAL LIMITS OF LIABILITY.** These limits do not increase the Coverage B (Personal Property) limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1. Money/Bank Cards. $100 on money or numismatic property or loss by theft or unauthorized use of bank fund transfer cards registered to an **insured**.

2. Bullion/Valuable Papers. $500 on gold or silver bullion, manuscripts, notes, securities, stamps, philatelic property, accounts, bills, deeds, evidences of debt, letters of credit, passports, documents, transportation or other tickets.

3. Jewelry/Watches/Furs. $500 for loss by theft of gems, watches, jewelry or furs.

4. Business Personal Property. $2,500 on **business** property.

   We do not cover any **business** property:

   a. that consists of samples or articles for sale or delivery; or

   b. if the property is away from the **residence premises**.

## PROPERTY NOT COVERED. We do not cover:

1. articles separately described and specifically insured by this or other insurance.

2. animals or birds.

motor or self-propelled vehicles or machines designed for movement on land, including attached machinery or equipment.

However, we do cover such vehicles which are not subject to motor vehicle registration and are:

a. devices and equipment for assisting the handicapped.

b. power mowers.

c. golf carts.

d. vehicles or machines used for recreational purposes while located on the **residence premises**.

e. farm equipment not designed for use principally on public roads.

4. trailers, semi-trailers or mobile homes.

   However, we do cover:

   a. trailers and semi-trailers that are designed for use principally off public roads.

   b. boat trailers while on the **residence premises**.

5. aircraft meaning any device used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

6. watercraft, including outboard motors and furnishings or equipment.

   We do cover watercraft, including outboard motors and furnishings or equipment, while located on land on the **residence premises**.

7. property of roomers or tenants.

8. property usually rented to others off the **residence premises**.

## EXTENSIONS OF COVERAGE.

1. **DEBRIS REMOVAL.** We will pay your expense for the removal from the **residence premises** of:

   a. debris of covered property if a Peril Insured Against causes the loss.

   b. a tree that has damaged covered property if a Peril Insured Against causes the tree to fall.

   This does not increase the limit of liability that applies to the damaged property.

2. **LOSS OF USE.** If a loss caused by a Peril Insured Against under Section I makes the **residence premises** wholly or partially untenantable, we cover:

   a. additional living expense, meaning any necessary and reasonable increase in living expense you incur so that your household can maintain its normal standard of living.

   b. fair rental value, meaning the fair rental value of that part of the residence premises usually rented to others by you, less any expenses that do not continue.

   The total limit of liability for all loss of use is 20% of the Coverage A (Dwelling) limit of liability. This is additional insurance and does not reduce the

Coverage A (Dwelling) limit of li____y. The deductible clause does not apply to loss of use coverage.

Payment will be for the reasonable time required to repair or replace the damaged property. If you permanently relocate, payment will be for the reasonable time required for your household to become settled.

The periods of time for loss of use are not limited by expiration of this policy.

3. **REASONABLE REPAIRS.** If a Peril Insured Against causes the loss, we will pay the reasonable cost you incur for necessary repairs made solely to protect covered property from further damage. This coverage does not increase the limit of liability that applies to the property being repaired.

4. **TREES, SHRUBS, PLANTS AND LAWNS.** We cover trees, shrubs, plants and lawns, on the **residence premises**, only for loss caused by the following Perils Insured Against: Fire or Lightning, Explosion, Aircraft, Vehicles not owned or operated by a resident of the **residence premises**, Vandalism and Malicious Mischief, Riot and Civil Commotion and Theft or attempted theft.

The maximum limit of liability for this coverage is 5% of the Coverage A (Dwelling) limit of liability. We will not pay more than $250 for any one tree, shrub or plant, including the cost of removal. We do not cover property grown for **business** purposes.

This is not additional insurance and does not increase the Coverage A (Dwelling) limit of liability. The deductible clause does not apply to trees, shrubs, plants and lawns.

5. **PROPERTY REMOVED.** We pay for expense and damage incurred in the removal of covered property from an **insured location** endangered by a Peril Insured Against. This coverage exists on a pro rata basis for 30 days at each location to which such

property is r____ed for preservation. This is not additional insurance and does not increase the Coverage B (Personal Property) limit of liability.

6. **CONSEQUENTIAL LOSS.** We insure:

a. property contained in a building on the **residence premises** against loss due to change in temperature as a direct result of physical damage to the dwelling, or any equipment contained in the dwelling, caused by a Peril Insured Against. The deductible clause does not apply to this coverage.

b. property contained in a building on the **residence premises** against a loss due to change in temperature as a direct result of physical damage to any power, heating or cooling equipment (including connections and supply pipes) not contained in or on the dwelling, caused by a Peril Insured Against.

The total limit of liability for the coverage described in 6.b. above is $500. This is not additional insurance and does not increase the Coverage B (Personal Property) limit of liability.

7. **AUTOMATIC REMOVAL.** If you move from the **residence premises** shown on the declarations page to another location within the United States, to be occupied as your principal residence, we cover:

a. the personal property under Coverage B (Personal Property) at each location in the proportion that the value at each location bears to the total value of all the personal property covered under Coverage B (Personal Property).

b. property in transit up to 10% of the Coverage B (Personal Property) limit of liability or $1,000, whichever is greater.

We provide coverage for only 30 days from the date the removal begins.

---

## SECTION I - PERILS INSURED AGAINST

**COVERAGE A (DWELLING)**

We insure against all risks of physical loss to the property described in Section I Property Coverage, Coverage A (Dwelling) unless the loss is excluded in Section I Exclusions.

**COVERAGE B (PERSONAL PROPERTY)**

We insure against physical loss to the property described in Section I Property Coverage, Coverage B (Personal Property) caused by a peril listed below, unless the loss is excluded in Section I Exclusions.

1. **Fire and Lightning.**

2. **Sudden and Accidental Damage from Smoke.**

3. **Windstorm, Hurricane and Hail.**

4. **Explosion.**

5. **Aircraft and Vehicles.**

6. **Vandalism and Malicious Mischief.**

7. **Riot and Civil Commotion.**

8. **Collapse of Building** or any part of the building.

9. **Accidental Discharge, Leakage or Overflow of Water or Steam** from within a plumbing, heating or air conditioning system or household appliance.

A loss resulting from this peril includes the cost of tearing out and replacing any part of the building necessary to repair or replace the system or appliance. But this does not include loss to the system or appliance from which the water or steam escaped.

Exclusions 1.a. through 1.h. under Section I Exclusions do not apply to loss caused by this peril.

10. **Falling Objects.**

This peril does not include loss to property contained in a building unless the roof or outside wall of the building is first damaged by the falling object.

11. **Freezing** of household appliances.

12. **Theft, including attempted theft and loss of property from a known place when it is likely that the property** has been stolen.

## SECTION I - EXCLUSIONS

1. The following exclusions apply to loss to property described under Coverage A (Dwelling) or Coverage B (Personal Property), but they do not apply to an ensuing loss caused by fire, smoke or explosion.

   a. We do not cover loss to electrical devices or wiring caused by electricity other than lightning.

   b. We do not cover loss caused by smog or by smoke from industrial or agricultural operations.

   c. We do not cover loss caused by windstorm, hurricane or hail to:

      (1) cloth awnings, greenhouses and their contents, buildings or structures located wholly or partially over water and their contents.

      (2) radio and television towers, outside satellite dishes, masts and antennas, including lead-in wiring, windchargers and windmills.

      (3) personal property contained in a building unless direct force of wind or hail makes an opening in a roof or wall and rain, snow, sand or dust enters through this opening and causes the damage.

   d. We do not cover loss of the following property by theft, including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

      (1) personal property while away from the **residence premises** at any other residence owned by, rented to or occupied by an **insured**, except while an **insured** is temporarily living there.

      (2) building materials and supplies not on the **residence premises**.

   e. We do not cover loss to machinery, appliances and mechanical devices caused by mechanical breakdown.

   f. We do not cover loss caused by:

      (1) wear and tear, deterioration or loss caused by any quality in property that causes it to damage or destroy itself.

      (2) rust, rot, mold or other fungi.

      (3) dampness of atmosphere, extremes of temperature.

      (4) contamination.

      (5) rats, mice, termites, moths or other insects.

      We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

   g. We do not cover loss caused by animals or birds owned or kept by an **insured** or occupant of the **residence premises**.

      We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

   h. We do not cover loss under Coverage A (Dwelling) caused by settling, cracking, bulging, shrinkage, or expansion of foundations, walls, floors, ceilings, roof structures, walks, drives, curbs, fences, retaining walls or swimming pools.

      We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

   i. We do not cover loss caused by or resulting from flood, surface water, waves, tidal water or tidal waves, overflow of streams or other bodies of water or spray from any of these whether or not driven by wind.

      We do cover an ensuing loss by theft or attempted theft or any act or attempted act of stealing.

   j. We do not cover loss caused by or resulting from freezing while the building is unoccupied unless you have used reasonable care to:

      (1) maintain heat in the building; or

      (2) shut off the water supply and drain plumbing, heating and air conditioning systems of water.

   k. We do not cover loss caused by earthquake, landslide or earth movement.

2. **GOVERNMENTAL ACTION.**

   We do not cover loss caused by the destruction of property by order of governmental authority.

   But we do cover loss caused by acts of destruction ordered by governmental authority taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

3. **BUILDING LAWS.**

   We do not cover loss caused by or resulting from the enforcement of any ordinance or law regulating the construction, repair or demolition of a building or structure.

4. **WAR DAMAGE.**

   We do not cover loss resulting directly or indirectly from war. This includes undeclared war, civil war, insurrection, rebellion, revolution, warlike act by military personnel, destruction or seizure or use for

HO-B                    Page 4 of 12

military purpose, and any consequence of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

5. **NUCLEAR DAMAGE.**

We do not cover loss resulting directly or indirectly from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused. We cover direct loss by fire resulting from nuclear reaction, radiation or radioactive contamination.

---

## SECTION I - DEDUCTIBLES

**DEDUCTIBLE CLAUSE 1 - WINDSTORM, HURRICANE, HAIL OR WIND DRIVEN RAIN** - The amount shown on the declarations page for Deductible Clause 1 will be deducted from the combined amount of each loss under Coverage A (Dwelling) and Coverage B (Personal Property) that results from windstorm, hurricane, hail or wind driven rain.

**DEDUCTIBLE CLAUSE 2 - ALL OTHER PERILS** - The amount shown on the declarations page for Deductible

Clause 2 will be deducted from the combined amount of each loss under Coverage A (Dwelling) and Coverage B (Personal Property), unless the loss results from windstorm, hurricane, hail or wind driven rain.

If a single event causes loss by windstorm, hurricane, hail or wind driven rain and loss by lightning, only the larger deductible will apply.

---

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

   a. to the **insured** for more than the amount of the **insured's** interest at the time of loss; or

   b. for more than the applicable limit of liability.

   Each time there is a loss to any building insured under Coverage A (Dwelling), the amount of insurance applicable to that building for loss by fire will be reduced by the amount of the loss. As repairs are made, the amount of insurance will be reinstated up to the limit of liability shown on the declarations page.

   Article 6.13. Policy A Liquidated Demand. A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. The provisions of this article shall not apply to personal property.

2. **Residential Community Property Clause.** This policy, subject to all other terms and conditions, when covering residential community property, as defined by state law, shall remain in full force and effect as to the interest of each spouse covered, irrespective of divorce or change of ownership between the spouses unless excluded by endorsement attached to this policy, until the expiration of the policy or until cancelled in accordance with the terms and conditions of this policy.

3. **Duties After Loss.**

   a. **Your Duties After Loss.** In case of a loss to covered property caused by a peril insured against, you must:

      (1) give prompt written notice to us of the facts relating to the claim.

      (2) notify the police in case of loss by theft.

      (3) (a) protect the property from further damage.

          (b) make reasonable and necessary repairs to protect the property.

          (c) keep an accurate record of repair expenses.

      (4) furnish a complete inventory of damaged personal property showing the quantity, description and amount of loss. Attach all bills, receipts and related documents which you have that justify the figures in the inventory.

      (5) as often as we reasonably require:

          (a) provide us access to the damaged property.

          (b) provide us with pertinent records and documents we request and permit us to make copies.

          (c) submit to examination under oath and sign and swear to it.

      (6) send to us if we request, your signed sworn proof of loss within 91 days of our request on a standard form supplied by us. We must request a signed sworn proof of loss within 15 days after we receive your written notice, or we waive our right to require a proof of loss. Such waiver will not waive our other rights under this policy.

          (a) This proof of loss shall state, to the best of your knowledge and belief:

              (i) the time and cause of loss;

              (ii) the interest of the **insured** and all others in the property involved including all liens on the property.

              (iii) other insurance which may cover the loss.

              (iv) the actual cash value of each item of property and the amount of loss to each item.

(b) If you elect to make claim under the Replacement Cost Coverage of this policy, this proof of loss shall also state, to the best of your knowledge and belief:

   (i) the replacement cost of the described dwelling.

   (ii) the replacement cost of any other building on which loss is claimed.

   (iii) the full cost of repair or replacement of loss without deduction for depreciation.

b. **Our Duties After Loss.**

(1) Within 15 days after we receive your written notice of claim, we must:

   (a) acknowledge receipt of the claim.

If our acknowledgement of the claim is not in writing, we will keep a record of the date, method and content of our acknowledgement.

   (b) begin any investigation of the claim.

   (c) specify the information you must provide in accordance with "Your Duties After Loss" (item 3.a. above).

We may request more information, if during the investigation of the claim such additional information is necessary.

(2) After we receive the information we request, we must notify you in writing whether the claim will be paid or has been denied or whether more information is needed:

   (a) within 15 business days; or

   (b) within 30 days if we have reason to believe the loss resulted from arson.

(3) If we do not approve payment of your claim or require more time for processing your claim, we must:

   (a) give the reason for denying your claim; or

   (b) give the reasons we require more time to process your claim. But, we must either approve or deny your claim within 45 days after requesting more time.

4. **Loss Settlement.** Covered property losses are settled as follows:

a. Our limit of liability and payment for covered losses to personal property, wall to wall carpeting, cloth awnings and fences will not exceed the smallest of the following:

(1) the actual cash value at the time of loss determined with proper deduction for depreciation.

(2) the cost to repair or replace the damaged property with material of like kind and quality, with proper deduction for depreciation; or

(3) the specified limit of liability of the policy.

b. Our limit of liability for covered losses to dwelling and other structure(s) under Coverage A (Dwelling), except wall to wall carpeting, cloth awnings and fences, will be at replacement cost settlement subject to the following:

(1) If, at the time of loss, the Coverage A (Dwelling) limit of liability is 80% or more of the full replacement cost of the dwelling, we will pay the repair or replacement cost of the damaged building structure(s), without deduction for depreciation.

(2) If, at the time of loss, the Coverage A (Dwelling) limit of liability is less than 80% of the full replacement cost of the dwelling, we will pay only a proportionate share of the full replacement cost of the damaged building structure(s). Our share is equal to:

$$\frac{\text{Replacement Cost of the Loss} \times \text{Coverage A (Dwelling) Limit of Liability}}{80\% \text{ of Replacement Cost of the Dwelling}}$$

(3) If, at the time of loss, the actual cash value of the damaged building structure(s) is greater than the replacement cost determined under (1) or (2) above, we will pay the actual cash value up to the applicable limit of liability.

In determining the amount of insurance required to equal 80% of the full replacement cost of the dwelling, do not include the value of excavations, underground pipes, and wiring and foundations which are below the surface of the ground.

We will pay only the actual cash value of the damaged building structure(s) until repair or replacement is completed. Repair or replacement must be completed within 365 days after loss unless you request in writing that this time limit be extended for an additional 180 days. Upon completion of repairs or replacement, we will pay the additional amount claimed under replacement cost coverage, but our payment will not exceed the smallest of the following:

(1) the limit of liability under this policy applicable to the damaged or destroyed building structure(s);

(2) the cost to repair or replace that part of the building structure(s) damaged, with material of like kind and quality and for the same use and occupancy on the same premises; or

(3) the amount actually and necessarily spent to repair or replace the damaged building structure(s).

5. **Loss to a Pair or Set.** In case of loss to an item which is part of a pair or set, the measure of loss shall be a reasonable and fair proportion of the total value of the pair or set. The importance of the item will be considered in assessing the loss. Such loss will not be considered a total loss of the pair or set.

6. **Salvage Rights.** If we notify you that we will pay your claim or part of your claim, the notice must also state whether we will or will not take all or any part of the damaged property. We must bear the expense of our salvage rights.

7. **Appraisal.** If you and we fail to agree on the actual cash value, amount of loss, or cost of repair or replacement, either can make a written demand for appraisal. Each will then select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a district court or a judicial district where the loss occurred. The two appraisers will then set the amount of loss, stating separately the actual cash value and loss to each item. If you or we request that they do so, the appraisers will also set:

   a. the full replacement cost of the dwelling.

   b. the full replacement cost of any other building upon which loss is claimed.

   c. the full cost of repair or replacement of loss to such building, without deduction for depreciation.

   If the appraisers fail to agree, they will submit their differences to the umpire. An itemized decision agreed to by any two of these three and filed with us will set the amount of the loss. Such award shall be binding on you and us.

   Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally.

8. **Loss Payment.**

   a. If we notify you that we will pay your claim, or part of your claim, we must pay within 5 business days after we notify you.

   b. If payment of your claim or part of your claim requires the performance of an act by you, we must pay within 5 business days after the date you perform the act.

9. **Catastrophe Claims.**

   If a claim results from a weather related catastrophe or a major natural disaster, each claim handling deadline shown under the Duties After Loss and Loss Payment provisions is extended for an additional 15 days.

   Catastrophe or Major Natural Disaster means a weather related event which:

   a. is declared a disaster under the Texas Disaster Act of 1975; or

   b. is determined to be a catastrophe by the State Board of Insurance.

10. **Other Insurance - Section I.** Other insurance is permitted on property covered by this policy, but other insurance covering the dwelling is not permitted. If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy

bears to the total amount of insurance covering the loss.

11. **Suit Against Us.** No suit or action can be brought unless the policy provisions have been complied with. Action brought against us must be started within two years and one day after the cause of action accrues.

12. **Abandonment of Property.** There can be no abandonment of property to us.

13. **Vacancy.** If the insured moves from the dwelling and a substantial part of the personal property is removed from that dwelling, the dwelling will be considered vacant. Coverage that applies under Coverage A (Dwelling) will be suspended effective 60 days after the dwelling becomes vacant. This coverage will remain suspended during such vacancy.

14. **Mortgage Clause (without contribution).**

   a. The word "mortgagee" includes trustee.

   b. We will pay for any covered loss of or damage to buildings or structures to the mortgagee shown on the declarations page as interests appear.

   c. The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the building or structure.

   d. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgagee has the right to receive loss payment if the mortgagee:

      (1) at our request, pays any premiums due under this policy, if you have failed to do so.

      (2) submits a signed, sworn statement of loss within 91 days after receiving notice from us of your failure to do so.

      (3) has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgagee.

      All of the terms of this policy will then apply directly to the mortgagee. Failure of the mortgagee to comply with d.(1), d.(2) or d.(3) above shall void this policy as to the interest of the mortgagee.

   e. If we pay the mortgagee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

      (1) the mortgagee's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

      (2) the mortgagee's right to recover the full amount of the mortgagee's claim will not be impaired.

      At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

mortgagee specific named on the declarations page written notice of cancellation.

If we cancel the policy, we will give the mortgagee the same number of days notice of cancellation we give you.

If you cancel the policy, we will give the mortgagee notice of cancellation to be effective on the date stated in the notice. The date of cancellation cannot be before the 10th day after the date we mail notice.

We will not give notice of cancellation to any successor or assignee of the mortgagee named in this policy.

g. If the property described under Coverage A (Dwelling) is foreclosed upon under the deed of trust, the mortgagee may cancel this policy of

insurance and will be entitled to any unearned premium from this policy.

The mortgagee must credit any unearned premium against any deficiency owed by the borrower and return any unearned premium not so credited to the borrower. The unearned premium will be figured using the customary pro rata procedures.

h. If we elect not to renew this policy, the mortgagee specifically named on the declarations page will be given 30 days written notice of the non-renewal.

15. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage for the benefit of a person or organization holding, storing or moving property for a fee.

## SECTION II - LIABILITY COVERAGE

**COVERAGE C (Personal Liability)**

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable. Damages include pre-judgment interest awarded against the **insured**; and

2. provide a defense at our expense by counsel of our choice even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate.

**COVERAGE D (Medical Payments to Others)**

We will pay the necessary medical expenses incurred or medically determined within three years from the date of an accident causing **bodily injury**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic

devices and funeral services. This coverage does not apply to you or regular residents of your household. This coverage does apply to **residence employees**. As to others, this coverage applies only:

1. to a person on the **insured location** with the permission of an **insured**.

2. to a person off the **insured location**, if the **bodily injury**:

a. arises out of a condition on the **insured location** or the ways immediately adjoining.

b. is caused by the activities of an **insured**.

c. is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured**,

d. is caused by an animal owned by or in the care of an **insured**.

## SECTION II - EXCLUSIONS

1. **Coverage C (Personal Liability) and Coverage D (Medical Payments to Others)** do not apply to:

a. **bodily injury** or **property damage** which is caused intentionally by or at the direction of the **insured**;

b. **bodily injury** or **property damage** arising out of or in connection with a business engaged in by an **insured**. But this exclusion does not apply to activities which are ordinarily incidental to non-business pursuits.

c. **bodily injury** or **property damage** arising out of the rental or holding for rental of any part of any premises by an **insured**. This exclusion does not apply to the rental or holding for rental of an **insured location**:

(1) on an occasional basis if used only as a residence.

(2) in part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders.

(3) in part, as an office, school or studio.

(4) if the rental is for not more than three car spaces or stalls in garages or stables.

d. **bodily injury** or **property damage** arising out of the rendering of or failure to render professional services.

e. **bodily injury** or **property damage** arising out of a premises:

(1) owned by an **insured**;

(2) rented to an **insured**; or

HO-B                         Page 8 of 12

(3)   rented to others by an **insured**;

that is not an **insured location**.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**.

f.   **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of:

(1)   motor or engine propelled vehicles or machines designed for movement on land, including attached machinery or equipment;

(2)   trailers, semi-trailers or mobile homes;

which are owned or operated by or rented to or loaned to an **insured**.

However, this exclusion does not apply to:

(1)   motor vehicles which are not subject to motor vehicle registration and are:

(a)   used for assisting the handicapped.

(b)   used to service an **insured location**.

(c)   golf carts while on the **residence premises** or used for golfing purposes.

(d)   designed and used for recreational purposes; and are:

(i)   not owned by an **insured**; or

(ii)   owned by an **insured** while on the **residence premises**.

(e)   in dead storage on the **residence premises**.

(f)   used exclusively on the **residence premises**.

(2)   trailers or semi-trailers while not being towed by or carried on a motor vehicle.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**.

g.   **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of watercraft:

(1)   with inboard or inboard-outdrive motor power of more than 50 horsepower owned by or rented to an **insured**.

(2)   powered by one or more outboard motors with more than 25 total horsepower if the outboard motor is owned by an **insured**. But, outboard motors of more than 25 total horsepower are covered for the policy period if:

(a)   you acquire them prior to the policy period and:

(i)   you declare them at policy inception; or

(ii)   your intention to insure is reported to us in writing within 45 days after you acquire the outboard motors.

(b)   you acquire them during the policy period.

(3)   that is a sailing vessel, with or without auxiliary power, which is 26 feet or more in length owned by or rented to an **insured**.

This exclusion does not apply while the watercraft is on the **residence premises**.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**.

h.   **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of aircraft.

Aircraft means any device used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**.

i.   **bodily injury** or **property damage** arising out of:

(1)   the entrustment by an **insured** to any person; or

(2)   the negligent supervision by an **insured** of any person;

with regard to the ownership, maintenance or use of any motor vehicle, watercraft or aircraft which is excluded in paragraph f, g, or h. above.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**.

j.   **bodily injury** or **property damage** caused directly or indirectly by war. This includes undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and any consequence of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

k.   **bodily injury** or **property damage** arising out of the transmission of sickness or disease by an **insured** through sexual contact.

l.   **bodily injury** to any person eligible to receive any benefits voluntarily provided or required to be provided by an **insured** under any workers' compensation law or occupational disease law.

2.   **Coverage C (Personal Liability)** does not apply to:

a.   liability under any contract or agreement.

However, this exclusion does not apply to written contracts:

HO-B

(1) that directly relate to the ownership, maintenance or use of an **insured location**; or

(2) where the liability of others is assumed by an **insured**;

unless excluded elsewhere in this policy.

b. **property damage** to property owned by an **insured**.

c. **property damage** to property rented to, occupied or used by or in the care of an **insured**. This exclusion does not apply to **property damage** caused by fire, smoke or explosion.

d. **bodily injury** or **property damage** for which an **insured** under this policy is also an insured under a nuclear energy liability policy or would be an insured under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by American Nuclear Insurers, Mutual Atomic Energy Liability Underwriters, or Nuclear Insurance Association of Canada.

e. **bodily injury** to you or an **insured** within the meaning of part a. or part b. of **insured** as defined.

3. **Coverage D (Medical Payments to Others)** does not apply to:

a. **bodily injury** to a **residence employee** if the **bodily injury**:

(1) occurs off the **insured location**; and

(2) does not arise out of or in the course of the **residence employee's** employment by an **insured**.

b. **bodily injury** to any person, other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location**.

## SECTION II – ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

a. expenses we incur and costs taxed against an **insured** in any suit we defend.

b. premiums on bonds required in a suit we defend but not for bond amounts more than the limit of liability for Coverage C (Personal Liability). We need not apply for or furnish any bond.

c. reasonable expenses incurred by an **insured** at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit.

d. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **Imperative Medical Expenses to Others.** We pay expenses incurred by an **insured** for immediate medical and surgical relief to others if imperative at the time of the accident.

3. **Damage to Property of Others.** We pay replacement cost up to $500 per **occurrence** for **property damage** to property of others caused by an **insured**.

We do not pay for **property damage**:

a. caused intentionally by an **insured** who is 13 years of age or older.

b. to property owned by an **insured**.

c. to property owned by or rented to a tenant of an **insured** or a resident in your household.

d. arising out of:

(1) a **business** engaged in by an **insured**.

(2) any act or omission in connection with a premises owned, rented or controlled by an **insured**, other than the **insured location**.

(3) the ownership, maintenance, use, loading or unloading of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

This exclusion does not apply to any motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an **insured**.

## SECTION II – CONDITIONS

1. **Limit of Liability.** The limit of liability for Coverage C (Personal Liability) shown on the declarations page is our total liability under Coverage C (Personal Liability) for all damages resulting from any one **occurrence**. This limit is the same regardless of the number of **insureds**, claims made or persons injured.

The limit of liability for Coverage D (Medical Payments to Others) shown on the declarations page is our total liability under Coverage D (Medical Payments to Others) for all medical expense payable for **bodily injury** to one person as the result of one accident. The total limit of our liability for all expenses payable to two or more persons injured in one accident is $25,000.

2. **Severability of Insurance.** This insurance applies separately to each **insured**. This condition will not increase our limit of liability for any one **occurrence**.

3. **Duties After Loss.** In case of an accident or **occurrence**, the **insured** will perform the following

duties that apply or will help us by seeing that these duties are performed:

a. Give written notice to us or our agent as soon as is practical, which sets forth:

(1) the identity of the policy and **insured**.

(2) reasonably available information on the time, place and circumstances of the accident or **occurrence**.

(3) names and addresses of any claimants and witnesses.

b. Promptly forward to us every notice, demand, summons or other process relating to the accident or **occurrence**.

c. At our request, help us:

(1) to make settlement.

(2) to enforce any right of contribution or indemnity against any person or organization who may be liable to an **insured**.

(3) with the conduct of suits, including attending hearings and trials.

(4) to secure evidence and obtain the attendance of witnesses.

d. The **insured** will not, except at the **insured's** own cost, voluntarily make payment, assume obligation or incur expense other than for immediate medical and surgical relief to others at the time of the **bodily injury**.

4. **Duties of an Injured Person - Coverage D (Medical Payments to Others).**

The injured person or someone acting for the injured person will:

a. give us written proof of claim, under oath if required, as soon as is practical.

b. authorize us to obtain copies of medical reports and records.

The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim - Coverage D (Medical Payments to Others).** Payment under this coverage is not an admission of liability by an **insured** or us.

6. **Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

No one will have the right to join us as a party to any action against an **insured**. Also, no action with respect to Coverage C (Personal Liability) can be brought against us until the obligation of the **insured** has been determined by final judgment or agreement.

Under Coverage D (Medical Payments to Others), no action can be brought until 30 days after the required proofs of claim have been filed with us.

7. **Bankruptcy of the Insured.** Bankruptcy or insolvency of the **insured** or of the **insured's** estate will not relieve us of our obligations under this policy.

8. **Other Insurance - Section II.** If the **insured** has other insurance under Coverage C (Personal Liability), we will not be liable for a greater proportion of a loss than the limit of liability shown on the declarations page bears to the total limit of all valid and collectible insurance against such loss.

However, with respect to loss arising out of the ownership, maintenance, operation, use, loading or unloading of:

a. any motor vehicle or recreational motor vehicle at the **residence premises**; or

b. watercraft,

this policy will not apply to the extent that any valid and collectible insurance is available to the **insured**.

9. **Notice of Settlement of Liability Claim.**

a. We will notify the **insured** in writing of any initial offer to compromise or settle a claim against the **insured** under the liability section of this policy. We will give the **insured** notice within 10 days after the offer is made.

b. We will notify the **insured** in writing of any settlement of a claim against the **insured** under the liability section of this policy. We will give the **insured** notice within 30 days after the date of the settlement.

## SECTION I AND II - CONDITIONS

1. **Policy Period.** This policy applies only to loss in Section I or **bodily injury** or **property damage** in Section II which occurs during the policy period stated on the declarations page.

2. **Concealment or Fraud.** This policy is void as to you and any other **insured**, if you or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance, made false statements or committed fraud relating to this insurance, whether before or after a loss.

3. **Liberalization Clause.** If the State Board of Insurance adopts a revision which would broaden or extend the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened or extended coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.** Changes in this policy may be made and perils added only by attaching a written endorsement properly executed by our authorized agent. No provision of this policy may be waived unless the terms of this policy allow the

HO-B ——————————————— Page 11 of 12 ——————————————

provision to be waived. Our request for an appraisal or examination will not waive any of our rights.

5. **Cancellation.**

   a. You may cancel this policy at any time by notifying us of the date cancellation is to take effect. We will send you any refund due when the policy is returned to us.

   b. We may cancel this policy for the reasons stated in this condition by mailing you notice in writing of the date cancellation takes effect.

      (1) If this policy has been in effect for less than 90 days and is not a renewal policy, we may cancel this policy for any reason.

      The effective date of cancellation cannot be before:

         (a) the 10th day after we mail notice if we cancel for non-payment of premium.

         (b) the 30th day after we mail notice if we cancel for any other reason.

      (2) If this policy has been in effect 90 days or more, we may not cancel this policy unless:

         (a) you do not pay the premium or any portion of the premium when due.

         (b) the State Board of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state.

         (c) you submit a fraudulent claim.

         (d) there is an increase in hazard covered by this policy that is within your control and that would produce an increase in the premium/rate of this policy.

      The effective date of cancellation cannot be before the 10th day after we mail the notice. Our notice of cancellation must state the reason for cancellation.

   c. If we cancel, our notice to you will state that if the refund is not included with the notice, it will be returned on demand.

   d. We may not cancel this policy solely because you are an elected official.

6. **Refusal to Renew.**

   a. We may not refuse to renew this policy because of claims for losses resulting from natural causes.

   b. We may not refuse to renew this policy solely because you are an elected official.

   c. We may refuse to renew this policy if you have filed three or more claims under the policy in any three year period that do not result from natural causes.

      If you have filed two claims in a period of less than three years, we may notify you in writing, that if you file a third claim during the three year period, we may refuse to renew this policy by providing you proper notice of our refusal to renew as provided in d. below. If we do not notify you after the second claim, we may not refuse to renew this policy because of losses.

      A claim does not include a claim that is filed but is not paid or payable under the policy.

   d. If we refuse to renew this policy, we must deliver to you, or mail to you at your mailing address shown on the declarations page and any mortgagee named in the declarations page, written notice of our refusal to renew not later than the 30th day before the date in which this policy expires. Proof of mailing will be sufficient proof of notice. If we fail to give you proper notice of our decision not to renew, you may require us to renew the policy.

7. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

8. **Subrogation.** An **insured** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

   If an assignment is sought, an **insured** must sign and deliver all related papers and cooperate with us.

   Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If the named insured dies, we insure:

   a. the named insured's spouse, if a resident of the same household at the time of death.

   b. the legal representative of the deceased. However, if this legal representative was not an **insured** at the time of death of the named insured, this policy will apply to such legal representative only with respect to the premises of the original named insured.

   c. any person who is an **insured** at the time of such death, while a resident of said premises.

**Prescribed by the Texas Department of Insurance**
**Homeowners Form B - Effective July 8, 1992**
**(Revised January 1, 1996)**

FE-5587
(8/96)

# BUILDING ORDINANCE OR LAW COVERAGE ENDORSEMENT
## (10% of Coverage A Limit)

The "BUILDING LAWS" Exclusion under SECTION I - EXCLUSIONS is modified to provide coverage only to the extent described in this endorsement.

### 1. Coverage Provided.

The total limit of insurance provided by this endorsement will not exceed an amount equal to 10% of the Coverage A limit shown in the Declarations at the time of the loss. This is an additional amount of insurance and applies only to the dwelling.

### 2. Damaged Portions of Dwelling.

When the dwelling covered under COVERAGE A - DWELLING is damaged by a covered peril we will pay for the increased cost to repair or rebuild the physically damaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same covered loss and the requirement is in effect at the time the covered loss occurs.

### 3. Undamaged Portions of Damaged Dwelling.

When the dwelling covered under COVERAGE A - DWELLING is damaged by a covered peril we will also pay for:

a. the cost to demolish and clear the site of the undamaged portions of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same covered loss and the requirement is in effect at the time the covered loss occurs; and

b. loss to the undamaged portion of the dwelling caused by enforcement of any ordinance or law if:

(1) the enforcement is directly caused by the same covered loss;

(2) the enforcement requires the demolition of portions of the same dwelling not damaged by the same covered loss;

(3) the ordinance or law regulates the construction or repair of the dwelling, or establishes zoning or land use requirements at the described premises; and

(4) the ordinance or law is in force at the time of the occurrence of the same covered loss; or

c. the legally required changes to the undamaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same covered loss and the requirement is in effect at the time the covered loss occurs.

### 4. Building Ordinance or Law Coverage Limitations.

a. We will not pay for any increased cost of construction under this coverage:

(1) until the dwelling is actually repaired or replaced at the same or another premises in the same general vicinity; and

(2) unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years.

b. We will not pay more for loss to the undamaged portion of the dwelling caused by the enforcement of any ordinance or law than:

(1) the depreciated value of the undamaged portion of the dwelling, if the dwelling is not repaired or replaced;

FE-5587
(8/96)

(CONTINUED ON REVERSE SIDE)

Printed in U.S.A.

**ENDORSEMENT  HO-101**
**Effective**
**October 2, 1993**

**RE ACEMENT OF**
**PERSONAL PROPERTY**

SECTION I PROPERTY COVERAGE

For an included additional premium, our limit of liability and payment for covered loss to:

1.    personal property; and

2.    wall-to-wall carpeting and cloth awning (Forms HO-B & HO-C only);

is extended to include Replacement Cost. Replacement Cost means there will not be a deduction for depreciation. Payment will not exceed the smallest of the following:

   a.    the Coverage B (Personal Property) limit of liability;

   b.    the replacement cost at the time of loss;

   c.    for property that is repairable, the cost of repair with material of like kind and quality with no deduction for depreciation; or,

   d.    the interest of the **insured**.

**We do not pay replacement cost for:**

   a.    property which cannot be replaced.

   b.    property not maintained in good or workable condition.

   c.    property that is either obsolete or useless to the **insured** at the time of loss.

   d.    watercraft including outboard motors for any replacement cost in excess of $2,500.

         We will pay replacement cost of watercraft including outboard motors up to a limit of $2,500.

   e.    **Property that is not repaired or replaced.**

**Loss Settlement:**

   a.    We will pay you:

         1.    the replacement cost of your damaged property up to $1,500; and

         2.    the actual cash value of your remaining damaged property

         within 5 business days after we notify you that we will pay the claim.

         If you repair or replace the damaged property, you may make claim for reimbursement on a replacement cost basis for the replacement cost of your property exceeding $1,500.  You must repair, restore or replace the property within 365 days after the loss.  Reimbursement will be made within 5 business days after we receive proof that the property has been repaired, restored or replaced.

   b.    In lieu of (a.) above, we may offer and you may accept or reject our offer to provide a replacement item of like kind and quality for your damaged property.

**Prescribed by the State Board of Insurance**
**Endorsement No. HO-101 - Replacement of Personal Property**
**Effective October 2, 1993**

## ENDORSEMENT NO. HO-105           RESIDENCE GLASS COVERAGE
### Effective
### July 8, 1992

The terms and conditions of this endorsement apply only to the property described in this endorsement. None of the terms, conditions and limits of liability stated in the policy apply to this endorsement except the Waiver or Change of Policy Provisions, Cancellation, Assignment, Subrogation and Definitions.

This insurance applies to:(check the box(es) that applies)

☒   Unscheduled Glass;

☐   Scheduled Glass described in the schedule below;

while in or on the dwelling or other structures on the **residence premises.**

1.   **Residence Glass Coverage.** We will pay for damages to residence glass caused by breakage of or by chemicals applied to such glass if:

   a.   described in the schedule below.

   b.   permanently attached to the dwelling or other structures on the **residence premises,** including storm windows and doors not permanently attached.

   We will also pay for making temporary repairs, resulting damage to encasing frames, and removing or replacing obstructions because of a covered loss to glass.

2.   **Exclusions.** We will not pay for loss or damage caused by:

   a.   fire.

   b.   war. This includes undeclared war, civil war, insurrection, rebellion or revolution or any consequence of these.

   c.   nuclear reaction, nuclear radiation or radioactive contamination or any consequence of these.

3.   **Loss Settlement.**

   a.   Unscheduled Residence Glass. We will not pay more than:

      (1)   $100 for all damage in any one occurrence for each of the following objects:

         (a)   multiple plate insulating unit;
         (b)   radiant heating panels;
         (c)   conservatory or greenhouse glass;
         (d)   chandeliers or light fixtures;
         (e)   jalousies, louvers or shutters;
         (f)   venetian type doors or windows;
         (g)   stained or leaded glass; or
         (h)   glass bricks, shingles or other structural glass.

      (2)   $100 for any one pane or plate of glass comprising any other object not listed in 3.a.(1) above.

**Prescribed by the State Board of Insurance**
**Endorsement No. HO-105 - Residence Glass Coverage - Effective July 8, 1992**

**ENDORSEMENT NO. HO-230**
**Effective**
**July 1, 1994**

**HOMEOWNERS**
**AMENDATORY ENDORSEMENT**

This endorsement must be attached to all Homeowners policies when Endorsement No. HO-210 is attached.

Farmers Personal Liability Endorsement No. HO-210, Section II Exclusions, Item 1.c. is amended as follows.

c.   **bodily injury** or **property damage** arising out of the rental or holding for rental of any part of any premises by an **insured**.  This exclusion does not apply to the rental or holding for rental of an **insured location**:

(1)   on an occasional basis if used only as a residence.

(2)   in part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders.

(3)   in part, as an office, school or studio.

(4)   if the rental is for not more than three car spaces or stalls in garages or stables.

(5)   if an **insured location** is shown on the declaration as farm premises rented to others.

**Prescribed by the Texas Department of Insurance**
**Endorsement No. HO-230 - Homeowners Amendatory Endorsement**
**Effective July 1, 1994**

**ENDORSEMENT NO. H0-102**                    **AGREED AMOUNT ON DWELLING**
**Effective**                               **(FOR USE WITH FORMS HO-B OR HO-C)**
**July 8, 1992**

The amount of insurance for Coverage A (Dwelling) shown on the declarations page complies with the amount of insurance required for Replacement Cost Coverage under SECTION I CONDITIONS, Loss Settlement. This endorsement does not increase the Coverage A (Dwelling) Limit of Liability.

Prescribed by the State Board of Insurance
Endorsement No. HO-102 - Agreed Amount on Dwelling - Effective July 8, 1992

THIS IS NOT A POLICY OF WORKERS' COMPENSATION INSURANCE. THE EMPLOYER DOES NOT BECOME A SUBSCRIBER TO THE WORKERS' COMPENSATION SYSTEM BY PURCHASING THIS POLICY, AND IF THE EMPLOYER IS A NON-SUBSCRIBER, THE EMPLOYER LOSES THOSE BENEFITS WHICH WOULD OTHERWISE ACCRUE UNDER THE WORKERS' COMPEN-SATION LAWS. THE EMPLOYER MUST COMPLY WITH THE WORKERS' COMPENSATION LAW AS IT PERTAINS TO NON-SUBSCRIBERS AND REQUIRED NOTIFICATIONS THAT MUST BE FILED AND POSTED.

Policy No. 83-P8-1982-6              FERRIS, J A & S A 8436-F116 D

## ENDORSEMENT NO. HO-210
### Effective October 2, 1993
## FARMERS PERSONAL LIABILITY

For an additional premium, Section II Liability Coverage and Section II Exclusions are replaced by the following.

The following Declarations are added to this policy. Insurance applies only to the coverages for which a premium is shown.

|  |  | PREMIUM |
|---|---|---|
| 1. | Initial Premium Charge | $    INCLUDED |

2.  The acreage and location of all farm/ranch premises owned by the insured, and/or rented by the insured to others are:

| | With Bldgs. | Without Bldgs. |
|---|---|---|
| WILSON TRACT | | X |
| HOSFIELD PARK | | X |
| PALMETAL | X | |
| STUART PLACE | | X |

Total Acreage    117                                       $    INCLUDED

3.  All farm/ranch premises with buildings that are owned by the insured, occupied by the insured, and/or rented by the insured to others:

No. of premises          X    Premium charge per premises  $          $

4.  No business pursuits, other than farming, are conducted on the insured location. Exceptions, if any:                                        $

5.  Insured farm employees

Total payroll $          Divided by $100 =
                         X Rate per $100                        =    $

6.  Animal Collision (market value not exceeding $400 each animal)          $
    Coverage is provided for the number of head denoted below:

☐ 1 but not more than 100 head          ☐ 101 but not more than 250 head

☐ 251 but not more than 500 head        ☐ 501 but not more than 1000 head

☐ Over 1000 head

7.  Custom Farming

Total payroll $          Divided by $100
                         X Rate per $100

                         TOTAL ENDORSEMENT PREMIUM   $    INCLUDED

**Prescribed by the State Board of Insurance**
**Endorsement No. HO-210 - Farmers Personal Liability - Effective October 2, 1993**          (F011OF)

e.  **bodily injury** or **property damage** arising out of a premises that is not an **insured location** but is:

    (1)  owned by an **insured**.

    (2)  rented to an **insured**.

    (3)  rented to others by an **insured**.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**.

f.  **bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading or unloading of:

    (1)  motor or engine propelled vehicles or machines designed for movement on land, including attached machinery or equipment;

    (2)  trailers, semi-trailers, or mobile homes:

        which are owned or operated by or rented or loaned to an **insured**.

However, this exclusion does not apply to:

    (1)  motor vehicles which are not subject to motor vehicle registration and are:

        (a)  used for assisting the handicapped.

        (b)  used to service an **insured location**.

        (c)  golf carts while on the **residence premises** or used for golfing purposes.

        (d)  designed and used for recreational purposes, and are:

            (i)  not owned by an **insured**.

            (ii)  owned by an **insured** while on the **residence premises**.

        (e)  in dead storage on the **residence premises.**

        (f)  used exclusively on the **residence premises**.

    (2)  trailers or semi-trailers while not being towed by or carried on a motor vehicle.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**.

g.  **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of watercraft:

    (1)  with inboard or inboard-outdrive motor power of more than 50 horsepower owned by or rented to an **insured**.

    (2)  powered by one or more outboard motors with more than 25 total horsepower if the outboard motor is owned by an **insured**. But outboard motors of more than 25 total horsepower are covered for the policy period if:

        (a)  you acquire them prior to the policy period and:

            (i)  you declare them at policy inception; or

            (ii)  your intention to insure is reported to us in writing within 45 days after you acquire the outboard motors.

        (b)  you acquire them during the policy period.

    (3)  that is a sailing vessel, with or without auxiliary power, which is 26 feet or more in length owned by or rented to an **insured**.

This exclusion does not apply while the watercraft is on the **residence premises**.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**.

h.  **bodily injury** and property damage arising out of the ownership, maintenance, operation, use, loading or unloading of aircraft.

Aircraft means any device used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**.

i.  **bodily injury** or **property damage** arising out of:

    (1)  the entrustment by an **insured** to any person; or

    (2)  the negligent supervision by an **insured** of any person;

with regard to the ownership, maintenance or use of any motor vehicle, watercraft or aircraft which is excluded in paragraph f., g. or h. above.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of an in the course of the **residence employee's** employment by an **insured**.

j.  **bodily injury** or **property damage** caused directly or indirectly by war. This includes undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and any consequence of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

k.  **bodily injury** or **property damage** which arises out of the transmission of sickness or disease by an **insured** through sexual contact.

(F011OF)

c.   At the end of each policy period, the earned premium will be computed and, upon notice to you, will become due and payable.

d.   If the earned premium for the policy period is less than the premium previously paid, we will return the unearned portion of the premium to you.

e.   You must keep records of the information necessary for the premium computation. You must also send copies of these records to us at the end of the policy period and at any time during the policy period that we request.

**Inspection and Audit - Coverage C (Personal Liability) and Coverage D (Medical Payments to Others)**

We will be permitted but not obligated to inspect your property and operations at any time.

Whether we inspect or not, we do not warrant that your property or operations are safe or healthful or are in compliance with any law, rule or regulation.

We may examine and audit your books and records at any time during the policy period or within three years after the termination of this policy. However, our right to examine and audit is restricted to the subject matter of this insurance.

### ADDITIONAL CONDITIONS

When a premium is shown for **Insured Farm Employees** on the declarations page, the following conditions apply;

Premium - Coverage C (Personal Liability) and Coverage D (Medical Payments to Others)

1.   All premiums for this policy will be computed in accordance with our rules, rates and minimum premiums.

2.   A premium shown as "advanced premium" is only an estimated premium. It will be applied to the amount of the earned premium due at the end of the policy period.

3.   At the end of each policy period, the earned premium will be computed and, upon notice to you, will become due and payable.

4.   If the earned premium for the policy period is less than the premium previously paid, we will return the unearned portion of the premium to you.

5.   You must keep your records of information necessary for the premium computation. You must also send copies of these records to us at the end of the policy period and at any time during the policy period that we request.

Inspection and Audit - Coverage C (Personal Liability) and Coverage D (Medical Payments to Others)

We will be permitted but not obligated to inspect your property and operations at any time.

Whether we inspect or not, we do not warrant that your property or operations are safe or healthful or are in compliance with any law, rule or regulation.

We may examine and audit your books and records at any time during the policy period or within three years after the termination of this policy. However, our right to examine and audit is restricted to the subject matter of this insurance.

**Prescribed by the State Board of Insurance**
**Endorsement No. HO-210 - Farmers Personal Liability - Effective October 2, 1993**

(F0114D)